Alvin Hawkins, J.,
delivered the opinion of the Court.
The Lexington and Knoxville Railroad Company was incorporated by An Act of the Legislature, on the 18th of February, 1852. Acts 1851-2, ch. 244.
The object of the charter, as appears from the first *601 section of the Act, was, to establish a communication by railroad, between the cities of Lexington, Kentucky, and Knoxville, Tennessee.
By the second section of the Act, power was given said company to run said road from any other point in Kentucky, which might be nearer to Knoxville, than Lexington, provided the same had immediate railroad connection with Lexington.
By the fifth section, the powers and privileges conferred upon the Louisville and Nashville Railroad Company, by the Act of 9th February, 1850, were extended to, and conferred upon, the Lexington and Knoxville Railroad Company, “To enable it to make a railroad communication between Lexington and Knoxville, or some other point in Kentucky, nearer to Knoxville than Lexington, but immediately connected with it by railroad.”
On the 25th of February, 1852, just one week after the passage of the Act incorporating the Lexington and Knoxville Railroad Company, another and different company, was incorporated by the name of the Knoxville, Cumberland Gap and Lexington Railroad Company: Acts 1851-2, ch. 209, §4.
The object of which, as appears from said section, was, to establish communication by railroad “between the city of Knoxville, Tennessee, in the direction of Tazewell, Claiborne County, through Cumberland Gap, and Lexington, Kentucky.”
By the fifth section of this Act, power was given said company to run said road from any other point in Kentucky, which might be nearer to Knoxville than *602 Lexington; provided such point had immediate railroad connection with Lexington; also, to run said road from any point on the East Tennessee and Virginia Railroad, which might be nearer Cumberland Gap than Knoxville.
By the eighth section of this Act, the powers and privileges conferred upon the Nashville & Louisville Railroad Company, by An Act passed 9th February, 1850, were again conferred upon the Lexington & Knoxville Railroad Company, “to enable it to make a railroad communication between Knoxville, or some point on the East Tennessee and Virginia Railroad, nearer Cumberland Gap than Knoxville, in the direction of Tazewell, Claiborne County, through Cumberland Gap, and Lexington, Kentucky, or some other point in Kentucky, nearer to Knoxville, or some point on the East Tennessee & Virginia Railroad, nearer than Lexington, but immediately connected with it by said road.”
Thus, these two charters granted for the same general purposes, and almost identical in their provisions, stood until the month of May, 1853, when the following order was made by the County Court of Campbell County, (to-wit:) “Ordered by the Court, that the Sheriff of Campbell County, open and hold an election in the several districts in this county, on the last Saturday in June next, for the purpose of submitting to the people of this county, the vote, whether they will authorize the Chairman of this Court to take fifty thousand dollars of stock in a railroad to be laid out from the town of Knoxville, Tennessee, to Lexington or Danville Kentucky, by issuing county *603 bonds, bearing interest at the rate of six per cent., payable balf yearly, for thirty years; provided the next Legislature will charter a railroad from the city of Knoxville to the town of Danville or Lexington, Kentucky; and provided the Legislature will pass a law authorizing the Chairman of the County Court, to issue county bonds, payable in thirty years,' bearing interest at the rate of six per cent., payable half yearly; and provided also, that said railroad passes through the County of Campbell.”
On the 22d of December, 1853, thereafter, the charter of the Lexington and Knoxville Railroad Company, was amended by An Act of that date — Acts, 1853-4, ch. 324 — by which the name of the company was changed to that of the Knoxville and Kentucky Railroad Company; and by which there was conferred on it, “all the powers and privileges necessary for the construction and use of a railroad from the City of Knoxville to the Kentucky line, in the direction of Cincinnati, Ohio, or Louisville or Lexington, Kentucky, so as to form a continuous railroad connection bétween said cities.” At the July Term, 1854, of . the County Court, for the County of Campbell, the following order was entered of record, to-wit:
“It is ordered by the Court * * * * * that the Chairman of the County Court, on the application of the President, Directors and Company, of the Knoxville & Kentucky Railroad Company, cause to be prepared and issued fifty thousand dollars of county coupon bonds, payable thirty years after date, with the in *604 terest payable semi-annually, at the county treasury, and in. such sums as said President, Directors and company may desire, which said bonds shall be in full discharge of that amount of stock, heretofore directed by a vote of the people of Campbell County, to be subscribed in .the said. company, and which issue of said bonds is hereby ordered in pursuance of said vote of the people of said county.”
No further steps whatever, seem to have been taken in reference to said subscription, or the issuance of bonds, until the first of April, 1867, when C. M. Mc-Ghee, acting as the President of the Knoxville and Kern tucky Railroad Company, caused a notice to be served .upon the. Chairman of the County Court of Campbell County, requiring him to furnish said company with fifty thousand dollars in the bonds of said county, to be expended in work on said road, in said county, etc.
At the April Term, 1867, of the County Court, an .order was entered ,of record reciting that the chairman had been notified to issue the bonds, etc., and directing him not to issue such bonds, unless compelled by law to do so.
’ The Chairman having refused to issue the bonds, said Railroad Company, on the 8th of May, 1867, presented to L. C. Houk, one of the Circuit Court judges for the State, a petition for a writ of mandamus, compelling the County Court to issue said bonds. Upon the. presentation of this petition, the judge ordered a peremptory writ to issue, but afterwards, in pursuance of an agreement between the parties, modi- *605 fled the order and directed that the writ stand and be treated as an alternative writ, returnable at the next term of the Circuit Court for Campbell County.
At the next term of the court, the justices filed their answer to the petition, and made return to the writ; afterwards at the same term of the court, the cause was heard “upon the petition and exhibits thereto, and the answer of the defendants;” when it was ordered by the Court that a peremptory mandamus issue, compelling the chairman to issue bonds of the county payable to the relator, pursuant- to the terms of the order of the County Court, at the July Term, 1854.
From this judgment, the justices have prosecuted an appeal to this court. Many questions have been presented for our consideration; but in the view we have taken of the case, we do not deem it necessary to notice all of them.
The relator exhibits with the petition the several orders of the County Court, before referred to, and alleges that, in pursuance of the order made at the May Term, 1853, an election was held in said county on the last Saturday in June, 1853, “which resulted in a large majority in favor of taking fifty thousand dollars of the stock in the Knoxville and Kentucky Railroad Company;” and “that all the conditions and provisions contained in said order, ordering said election, have been fully, at least substantially complied with.” That, after the work upon said road in the county of Campbell, had commenced, the relator, *606 through its President, had made a formal demand in writing upon the justices composing the County Court, to furnish to the relator the bonds of the county in accordance with the vote of the people and the subsequent order of the County Court, the only result of which had been the order of April Term, 1867, directing the Chairman not to issue the bonds unless compelled by law to do so.
In their return to the writ, by way of answer to the petition, the justices admit that work had commenced on said road in Campbell County; and among other defenses, insist:
First, That the order of the County Court made at the May Term, 1853, was wholly unauthorized by law, and can therefore, have no binding force whatever.
Second, That the order made at the July Term, 1854, directing the issuance of the bonds of the county was unauthorized, and therefore void.
Third, That neither the order of May, 1853, or the election holden thereunder, had any reference whatever, to the Knoxville and Kentucky Railroad, but to another and different road to be thereafter chartered by the Legislature; and therefore the relator is not entitled to demand or receive the bonds of the county.
Fourth, That the terms and conditions of the order of May, 1853, and of the vote of the people of the county in June, 1853, have never been complied with; and therefore, there is no legal liability resting upon the defendants, to issue the - bonds to the relator or any one else.
*607 This statement of the case, ■ is sufficient to present the questions which are deemed decisive of the • rights of the parties.
It is not denied or pretended, that, at the date of the order of election of May, 1853, or of the election in June, 1853, either the Knoxville, Cumberland Gap, and Lexington Railroad, or the Lexington and Knoxville Railroad, afterwards changed to the Knoxville and Kentucky Railroad, had been located or laid out through Campbell county, or elsewhere; and if the order of election, had any reference to either road, we are wholly unable to discover which.
But when reference is had to the order itself, and it is remembered that both companies had been chartered by the previous Legislature, it is very apparent that no reference was had to either road. For one of the conditions upon which the stock was to be subscribed as expressed in the order itself, is, that “the next Legislature will charter a railroad from the city of Knoxville to the town of Danville, or Lexington, Kentucky.”
Then, we think it very clear, that neither company could, at that time, claim the benefit of the proposed subscription, or the bonds of the county, even if the action of the County Court, in ordering the election or the proposed subscription, and issuance of the county bonds, had been authorized by law.
Counsel for the relator rely upon the provisions of An Act passed January 22d, 1852, entitled “An Act to regulate county subscriptions for railroad' stock,” as *608 conferring power upon tbe County Court of Campbell County, to order the election, subscribe stock in railroads, and issue county bonds: Acts 1851-2, ch. 117.
It therefore becomes necessary to consider the provisions of that statute. Section first provides, that “It shall be lawful for the County Courts of the respective counties in this State, through which a railway or railways have been or shall be located, or which may be contiguous thereto, to subscribe stock in such railroad, or any such railroad companies, through their Chairman, as is hereinafter provided for.”
Section second of the Act, provides, that, before any County Court shall be permitted to subscribe stock in the name of the county, it shall be its duty to call for the approbation of the legal voters of the county, by advertising an election to be held by the sheriff of the county, giving at least thirty days’ notice of the same, which shall specify the amount of stock proposed to be taken, and when payable; and if a majority of votes polled, be for subscription, then the Chairman shall carry into effect the will of the majority, and subscribe the amount of stock in such railroad company so voted for.
The power to make the subscription, is conferred by the first section, while the remaining sections of the Act merely prescribe the manner in which the power may be exercised. By the first section, the power is conferred upon “County Courts of the respective counties in this State, through which a railway or railways have been or shall be located, or which may be contiguous thereto.”
*609 "We think, that, under the provisions of the second section, before the County Court was authorized to make the proposed subscription, it is indispensable, the notice of the election should not only specify the amount of stock proposed to be taken, and when the same was payable, but also, the company in which the same was proposed to be taken.
This Act confers no authority whatever, upon the County Court, to issue the bonds of the county, for the purpose of paying for the stock subscribed by it; but contemplates the payment of the subscription, by the collection of taxes levied for that purpose.
It does not appear, that the order of election, of May, 1853, or the notices thereof, or even the election itself, had any reference, whatever, to any proposed subscription of stock, either in the Lexington &' Knoxville Railroad Company, or the Knoxville & Kentucky Railroad Company; nor can we even infer, from the record before us, that such was the case.
It follows, therefore, the action of the County Court, and the election h'olden in pursuance thereof,' were unauthorized by the Act of the 22d January, 1852, before referred to, and the relator has, by virtue thereof, acquired no right to the proposed subscription or bonds of the county. But the counsel for the relator insists, that, although these acts may have been' unauthorized and invalid at the time they transpired, yet, by the Act of February 18th, 1854, ch. 182, they were made valid and binding.
Touching the question, ' whether such unauthorized action by a County Court, could, by a subsequent legis *610 lative enactment such as this, be made valid and binding upon a county, we express no opinion.
Conceding, however, that, in this manner, validity might be given to such acts, so as to bind a county, we will proceed to examine this statute, with a view to its operations upon the rights of the parties in this case.
By the first section of this Act, it was provided, that the several counties named therein, among which is the county of Campbell, should have the same power and authority to take stock in a railroad, and to issue their bonds, as had been granted to Lawrence and other counties, by An Act passed February 28th, 1852, entitled “An Act to incorporate the Nashville, Franklin & Columbia Bailroad Company.”
By reference to the Act of February 28th, 1852, referred to, it will be seen: It is provided that the County Courts of the counties enumerated, are authorized to subscribe for whatever amount of stock in any railroad company, chartered to build a railroad through said counties, or either of them, said courts may deem expedient, and to issue the bonds of the counties, for the amount of stock so subscribed; provided, the question shall first have been submitted to the voters of the county which it is proposed shall subscribe stock, and a majority of such voters shall have decided in favor of the subscription proposed. And section 14, provides for the issuance of bonds, whenever a majority of the voters shall have decided in favor of taking the stock proposed; which bonds shall be delivered to the railroad company for the amount of stock so taken.
*611 It is not insisted that any election has been. holden in the county of Campbell under the authority of the Act of February 18th, 1854. Therefore, no right to the bonds of the county, is, by the provisions of the first section thereof, conferred upon the Knoxville and Kentucky Railroad Company.
By the second section, it is provided “that the acts of any of said counties in voting stock in railroads, and to issue county bonds for the same, not heretofore provided for by law, shall hereby be declared as valid and binding as though said acts had been strictly in accordance with law.”
Conceding to this section all that is claimed for it, it will not be pretended that it even proposes to change the terms or conditions of the proposed subscriptions by the county of Campbell.
It cannot make valid and binding the subsequent action of the County Court at its July Term, 1854, directing the issuance of the bonds. All that can be claimed for it, is, that it has made valid and binding the action of the Court at the May Term, 1853, and the election holden in pursuance thereof, prior to the passage of the Act. What, then, was tliat action? The county of Campbell proposed to take stock in a railroad, “to be laid out from the town of Knoxville, Tennessee, to Lexington or Danville, Kentucky, by issuing county bonds, bearing interest at the rate of six per cent., payable half yearly, for thirty years; provided the next Legislature will charter a railroad from the City of Knoxville, to the town of Danville or Lexington, Kentucky; and provided the Legislature will pass *612 a law authorizing the Chairman of the County Court to issue county bonds, payable in thirty years, bearing interest at the rate of six per cent., payable half yearly; and provided, also, that said road passes through the county of Campbell.”
Before the County Court could, in any event, be compelled to issue the bonds, it must be' shown that the terms and conditions of the proposed subscription have been complied with.
The relator alleges that they have been substantially complied with.
It is not insisted, however, that the next Legislature did charter a railroad “from the City of Knoxville to the town of Danville ór Lexington, Kentucky.' But the relator insists that this condition has been substantially complied with, by the passage of the Act of the 22d December, 1853, before referred to, and by which the name of the Lexington & Knoxville Railroad Company, was changed to that of the relator. We do not think this jjroposition can be maintained.
By recurring again to the terms of the original charter, it will be seen that the general purpose of the charter was to establish a communication by railroad, “between the cities of Lexington, Kentucky, and Knoxville, Tennessee,” and the power was conferred upon the company to run said road from any other point in Kentucky which had immediate railroad connection with Lexington; and by the eighth section of the Act of Eebruary 25th, 1852, before referred to, power was given to this company, “to enable it to make a railroad communication between Knoxville or some other *613 point on the East Tennessee & "Virginia Railroad, nearer Cumberland Gap than Knoxville, in the direction of Tazewell, Claiborne County, through Cumberland Gap, • and Lexington, Kentucky; or some other point in Kentucky nearer to Knoxville; or some point on the East Tennessee & Virginia Railroad, nearer than Lexington, but immediately connected with it by railroad.”
While, by the Act of 22d December, 1853, before referred to, the power Avas conferred upon said company, “to construct and use a railroad from the City of Knoxville, to the Kentucky line, in the direction of Cincinnati, Ohio, or Louisville or Lexington, Kentucky, so as to form a continuous railroad connection between said cities.”
We are wholly unable to perceive any material change in the general purpose or terms of the charter, or of the powers conferred upon the company, by the amendment of the 22d December, 1853, by virtue of which it can be maintained, the first condition in the proposition of Campbell County to take stock, has been complied with. In fact, if the charter has been substantially, in any manner changed, by that amendment, the change is not so nearly in accordance with the conditions of the proposed subscription, as are the terms of the original charter; notAvithstanding the existence of which, the County Court of Campbell County proposed to take stock in a railroad only upon the condition, “the next Legislature would charter a road from Knoxville to Lexington, or Danville, Kentucky.”
It is sufficient to say, that the amendment of the charter of the Lexington and Knoxville Railroad Com *614 pany, by wbicb the name of the company was changed, is not even a substantial compliance with the conditions of the proposed subscription.
The first section of the Act of February 18th, 1854, before referred to, confers no authority upon the Chairman to issue the bonds of the county, except upon the terms and conditions prescribed by the Act of February 28th, 1852; and conceding that the second section of the Act of February 18th, 1854, did make valid the action of the County Court, in ordering the election, and the election holden in pursuance thereof, it only made valid that which had been done, and did not confer upon the Chairman of the Court the power to do other acts, otherwise unauthorized by law, or to issue the bonds as proposed.
Therefore, the second condition upon which the county of Campbell proposed to take stock in a railroad, has not been complied with.
The order of the County Court, of July, 1854, directing the issuance of the bonds, was without authority of law, and, therefore, of no binding force whatever.
The result is, the relator is not entitled to the bonds, and the action of the Circuit Court in awarding a peremptory mandamus, compelling the issuance of said bonds, is erroneous, and must be reversed, and the petition dismissed.